DAVID E. ZINK, Plaintiff-Appellant, v. MAPLE INVESTMENT AND DEVELOPMENT CORPORATION, Defendant-Appellee.

Second District No. 2—92—0798

Opinion filed August 2, 1993.

Robert R. Verchota and David Drenk, both of Donovan & Roberts, P.C., of Wheaton, for appellant.

James G. Bauer, of Bauer & Hotte, P.C., of Elmhurst, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, David E. Zink, filed suit against defendant, Maple Investment and Development Corporation, to recover commissions allegedly due and owing pursuant to a real estate contract. Plaintiff appeals from an order entering judgment in favor of defendant. For the following reasons, we reverse and remand.

Defendant was a real estate development company and licensed real estate broker. Plaintiff worked as an independent real estate broker and project manager for defendant from 1975 until July 15, 1990. Plaintiff's business relationship with defendant was governed by an agreement which provided that the "usual and customary commissions" would be charged for services performed by plaintiff. The agreement further stated as follows:

> "When the Salesman [Zink] shall perform any service hereunder, whereby a commission is earned, said commission shall, when collected, be divided between the Broker and Salesman in accordance with office rules and regulations.
>
> The division and distribtuion [*sic*] of the earned commission as set out in office rules and regulations which may be paid to or collected by said Broker, shall take place as soon as practicable after collection of such commissions from the party or parties for whom the services may have been performed."

In April 1988, James Bell, president of defendant corporation and 40% beneficial owner of a parcel of unimproved real estate located in Woodridge, Illinois, executed a listing agreement which gave defendant the exclusive right to sell or offer the property for sale. Although plaintiff did not sign the agreement, he is designated as the sales representative on this particular parcel of property. Commissions were contemplated in the agreement as follows:

> "This exclusive right to sell shall continue, as irrevocable, for the period of 180 days from and after the date hereof. If any sale or exchange is made by you or by myself, or by anyone else during the time period herein fixed or any continuance thereof, or is sold within 180 days after the termination of this agreement to anyone with whom you have had negotiations, I hereby agree to pay you the commission on the full sale price as per reverse side hereof. A commission shall be deemed to have been earned at such time as a sales contract or exchange contract is executed and all contingencies are met, or an option has been exercised involving the subject property. Said commission shall be paid at the time of closing or settlement. If there

is a default of the contract of sale involving the subject property, then the commission shall be paid following the default. The real estate herein is unimproved property for purposes of the applicable commission schedule on the reverse side. You shall have the privilege of purchasing this property during said period and any continuance thereof, if you so desire, and you may deduct the agreed commission from the purchase price."

The reverse side of the agreement provided for commission on unimproved property at a rate of "10% úp to $100,000 plus 7% on the next $100,000, plus 5% on the selling price over $200,000" with a minimum commission of $1,000. According to the agreement, commissions were due and payable by defendant to the salesman on consummation of the sale.

In July 1988, a grant of option was executed by the trustee, as seller, giving James P. Avgeris a 60-day option to purchase the property for $2,286,170.37. The option contract allowed Avgeris to extend the option for six additional 30-day periods. If the option was exercised, the option deposits would be applied to the purchase price. Each of the extensions provided for was exercised by Avgeris and the option deposits were paid to the seller.

An agreement to extend the option was executed July 26, 1988, granting Avgeris three additional 30-day extensions for $10,000 each. The final extension period had an expiration date of June 22, 1989. In June 1989, the trustee, as seller, and Avgeris, purchaser, executed a real estate sales contract for the property at a purchase price of $2,435,463. Closing was scheduled for December 15, 1989. Nevertheless, in September 1989, Avgeris and the trustee executed an addendum to the real estate sales contract. The addendum extended the closing date to April 2, 1990, and required Avgeris to deposit $105,000 with the seller. The seller would retain $15,000 per month commencing in September 1989 until the closing occurred. Avgeris was able to cancel the contract provided he gave 60 days' notice. In the event that Avgeris cancelled the contract, the seller would retain the extension deposit at the rate of $15,000 per month.

Avgeris paid each extension deposit through April 2, 1990. The sellers received approximately $189,000 in escrow, option, and extension deposits. However, Avgeris' option expired and no closing on the contract occurred on or before April 2, 1990.

On April 5, 1990, a second listing agreement on the property was executed by Bell as agent of the beneficial owners of the property. This agreement was approved and accepted by plaintiff as sales representative of defendant. Plaintiff continued his association with defend-

ant until its office closed on July 15, 1990. At this time, plaintiff inquired about his commission in Avgeris' defaulted contract. Defendant refused to pay plaintiff any commission. Plaintiff filed suit against defendant to collect $70,809.23 in commission resulting from the defaulted option contract. Following a bench trial, the court entered judgment in defendant's favor, and plaintiff appealed.

At issue is whether defendant owes a commission to plaintiff pursuant to the contract for sale between the trustee as seller and Avgeris. Although Avgeris did not purchase the property and there was no closing on the contract, plaintiff asserts that he is entitled to his commission.

A reviewing court will not reverse a judgment following a bench trial unless it is against the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident. (*Swanson v. Village of Lake in the Hills* (1992), 233 Ill. App. 3d 58, 64.) A judgment is against the manifest weight of the evidence when the appellant presents evidence that is so strong and convincing that it completely overcomes the evidence and presumptions existing in the appellee's favor. *F D L Foods, Inc. v. Kokesch Trucking, Inc.* (1992), 233 Ill. App. 3d 245, 252.

In this case, the listing agreement stated that the commission "shall be deemed to have been *earned* at such time as a sales contract *** is executed and all contingencies are met, or an option has been exercised involving the subject property." (Emphasis added.) Plaintiff contends that his commission was earned pursuant to this language when Avgeris and the seller executed a contract for sale on the subject property. Defendant responds by asserting that plaintiff's right to a commission is not governed by the listing agreement, as plaintiff was not a party, but by his employment agreement with defendant. According to defendant, the "usual and customary commissions" were distributed to a salesman "in accordance with office rules and regulations" and "as soon as practicable after collection of such commissions from the party or parties for whom the services may have been performed." Since there was no closing on the contract or exercise of the option, defendant contends that plaintiff was not entitled to collect a commission.

Avgeris and the seller executed a contract for sale on the subject property in June 1989. It was *not* an option contract and specifically stated that Avgeris was entitled to credit option deposits previously paid against the purchase price. Defendant presented evidence that on August 16, 1989, a meeting took place between Bell, Avgeris and plaintiff. Avgeris apparently believed he was under an option contract.

Notwithstanding the real estate sales contract, the parties executed an addendum to the real estate contract on September 12, 1989, which extended the closing date, required Avgeris to make a deposit of $105,000, and allowed Avgeris to cancel the contract by providing 60 days' notice. According to defendant, the addendum transformed the sales contract back into an option contract. Since Avgeris did not exercise the option, defendant contends that plaintiff is not entitled to a commission.

■ Plaintiff's right to recover his commission from defendant is governed by his employment agreement with defendant. (See *Wilmette Real Estate & Management Co. v. Luvisi* (1988), 172 Ill. App. 3d 232, 236.) The agreement provides that the salesman's commission would be paid "as soon as practicable after collection of such commissions from the party or parties for whom the services may have been performed." It does not specifically state when the commission is earned. Therefore, the settled rule governing a broker's right to receive a commission applies.

If a real estate broker produces a purchaser, within the time limit of his authority, who is ready, willing and able to purchase the property on the terms prescribed by the seller, he is entitled to a commission even if the seller refuses to perform the contract. (*Hallmark & Johnson Properties, Ltd. v. Gadea* (1991), 218 Ill. App. 3d 921, 926; *Wilmette Real Estate*, 172 Ill. App. 3d at 236.) The purchaser procured by the broker and the seller must enter into a valid and enforceable contract on the terms proposed in the brokerage agreement. (*Herb Fox, Ltd., Realtors v. Stewart* (1980), 91 Ill. App. 3d 201, 203.) The sales contract must be mutually obligatory upon the seller and purchaser in order for the broker to recover the commission where the sale is not consummated. When there are contingencies in the contract which render it unenforceable by the seller, the broker is entitled to a commission only if he shows the contingencies have been met. *Herb Fox, Ltd., Realtors*, 91 Ill. App. 3d at 203.

Defendant circumferentially asserts that plaintiff is not entitled to a commission because the sales contract executed in June 1989 was not valid. An enforceable contract must include a meeting of the minds or mutual assent to the terms of the contract. (*Academy Chicago Publishers v. Cheever* (1991), 144 Ill. 2d 24, 30.) Since Avgeris stated at the August 16, 1989, meeting that he believed he was still under an option contract, defendant contends that there was no mutual assent to the terms of the contract executed in June 1989. It is defendant's contention that the addendum created a valid and enforceable option contract where no contract previously existed.

The unilateral mistake of one party to a contract may not be relied upon to relieve that party from the obligations of the contract where the party's own negligence and lack of prudence resulted in the mistake. (*Harney-Morgan Chevrolet Olds Co. v. Rabin* (1983), 118 Ill. App. 3d 602, 606.) Our review of the sales contract reveals that its terms are not so unclear that Avgeris was reasonably mistaken as to its terms. The contract executed in June 1989 is a standard real estate sales contract. It names a definite closing date and does not refer in any way to an option contract, aside from crediting previous option deposits paid against the final sales price. For these reasons, defendant has failed to sustain its argument of proving a lack of mutual assent to the terms of the contract due to Avgeris' unilateral mistake.

■ The manifest weight of the evidence in this case illustrates that plaintiff earned a commission pursuant to the terms of the listing agreement when the contract for sale was executed in June 1989. Once the real estate sales contract was executed, the prior unilateral option contract between Avgeris and the sellers was converted to a bilateral contract. (See *Prime Group, Inc. v. Northern Trust Co.* (1991), 215 Ill. App. 3d 1065, 1070.) Contrary to defendant's contention, the subsequent addendum did not operate as a repudiation of the prior agreement which transformed the bilateral sales contract back into an option contract. (See *Prime Group*, 215 Ill. App. 3d at 1071. *Contra Joseph A. Thorsen Co. v. Husted* (1977), 50 Ill. App. 3d 1043, 1046.) Rather, the addendum extended the closing date in consideration of payment by Avgeris. Although the addendum allowed Avgeris to notify the seller that he was cancelling the addendum in order to obtain a refund of the unapplied extension deposit, it did not grant Avgeris the right to a refund of the sums paid under the option contract or the earnest money paid under the real estate contract. Once a seller enters into an enforceable contract of sale with a purchaser procured by a broker, the readiness, willingness, and ability of the purchaser is no longer open to question and the broker's right to compensation accrues whether or not the sale is completed. (*Hallmark & Johnson Properties, Ltd. v. Taylor* (1990), 201 Ill. App. 3d 512, 517.) When the sales contract was signed, plaintiff's right to a commission accrued. Pursuant to the terms of plaintiff's employment agreement, defendant was under a duty to attempt to collect the commission from the seller. The manifest weight of the evidence illustrates that defendant breached this duty by failing to attempt to collect the commission from the seller. For these reasons, the judgment of the trial court is against the manifest weight of the evidence.

■ As an affirmative defense, defendant asserts that plaintiff's claim is barred by the doctrines of estoppel and *laches*. Estoppel arises when a party, by his words or conduct, intentionally or through culpable negligence, induces reasonable reliance by another on his representations and thus leads the other, as a result of that reliance, to change his position to his detriment. (*Byron Community Unit School District No. 226 v. Dunham-Bush, Inc.* (1991), 215 Ill. App. 3d 343, 348.) While the intent to mislead is not necessary, reliance by the opposing party must be reasonable. (*Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 939-40.) In August 1989, a meeting took place between Bell, Avgeris, and plaintiff. The parties discussed the proposed addendum to the sales contract. Defendant contends that plaintiff had an obligation to inquire how the addendum would affect his commission and that his failure to do so bars recovery under the doctrines of *laches* and estoppel. We disagree.

First, we disagree that plaintiff had an obligation to inquire because plaintiff was entitled to a commission regardless of what transpired at the meeting. Second, plaintiff's conduct at the meeting did not induce defendant to reasonably rely to its detriment. Assuming *arguendo* plaintiff had a duty to inquire about his commission, there is absolutely no evidence that the defendant would have done anything different but for plaintiff's conduct. The alleged detriment defendant claims to have suffered is the execution of the addendum. As we previously discussed, the addendum did not transform the contract back into an option. Execution of the addendum did not result in a detriment to defendant, since defendant, as well as plaintiff, remained entitled to a commission from the sellers, and Bell on behalf of the sellers did not object to the extension. There was neither any change in defendant's position nor any detriment resulting from plaintiff's failure to express a concern about the extension of the closing date.

Finally, defendant asserts that plaintiff is barred from bringing suit under the doctrine of *laches*. *Laches* is an equitable doctrine which bars an action if, because of an unreasonable delay in bringing suit, a party is misled or prejudiced or takes a course of action that he would not have otherwise taken. (*Streams Condominium No. 3 Association v. Bosgraf* (1991), 219 Ill. App. 3d 1010, 1016.) Since plaintiff failed to assert his right to the commission until after defendant's office closed on June 15, 1990, defendant contends his action is barred under the doctrine of *laches*. We disagree.

Plaintiff acted in accordance with his contract with defendant. Plaintiff's right to a commission accrued in June 1989, when the sales contract was executed. He acted reasonably in assuming that defend-

ant would pay its commission "as soon as practicable after collection" from the sellers. Waiting from April 2, 1990, the scheduled closing date, until the office closed on June 15, 1990 to assert his right was not an unreasonable delay. Furthermore, defendant has not demonstrated that the delay operated to its detriment.

We determine that the manifest weight of the evidence fails to sustain defendant's affirmative defenses. We reverse the judgment of the circuit court of Du Page County and remand the cause for a determination of the amount of commission owed and for further proceedings consistent with this opinion.

Reversed and remanded

GEIGER and QUETSCH, JJ., concur.