*In re* MARRIAGE OF LAWRENCE SCHLAM, Petitioner-Appellant, and CARMEN DONALDSON, f/k/a Carmen Schlam, Respondent-Appellee.

Second District   No. 2—94—0680

Opinion filed March 28, 1995.

Warren H. Larson, of Larson & Larson, of Rockford, and Lawrence Schlam, of Northern Illinois University College of Law, *pro se*, for appellant.

Gary B. Hurt, of Aurora, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Petitioner, Lawrence Schlam, appeals from the trial court's order of November 23, 1993, striking as void *ab initio* portions of the dissolution order and the "Joint Parenting Agreement" (agreement) entered into by petitioner and respondent, Carmen Donaldson, formerly known as Carmen Schlam. The present case originated when petitioner brought a petition for a rule to show cause based on respondent's alleged refusal to allow petitioner to exercise custody rights pursuant to the agreement. In response to petitioner's petition, respondent filed a "Petition to Declare as Void *Ab Initio* Joint Parenting Agreement and Related Documents" (petition to declare void). Petitioner perfected his appeal on June 13, 1994.

Petitioner contends the trial court erred (1) because respondent's petition to declare void was estopped as a collateral attack upon the trial court's judgment dissolving the marriage; (2) in reversing portions of the original judgment which recognized that petitioner had standing and that the trial court had jurisdiction over respondent's minor child, Lisa Marie Schlam (Lisa), under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 1992)); (3) in granting respondent's petition to declare void where re-

spondent failed to meet the requirements of a motion to modify custody (750 ILCS 5/610(b) (West 1992)); and (4) because granting the petition to declare void was contrary to the purposes of the Act and contrary to public policy. We reverse and remand.

On August 12, 1978, respondent gave birth to Lisa. Petitioner and respondent were married in 1984. Petitioner is not the biological father of Lisa. In a report filed on July 12, 1993, the guardian *ad litem* stated Lisa "expressed pleasure at knowing her biological father was Puerto Rican." We make note of this passage only because it is the sole direct reference to the biological father contained in the record. The biological father was not a party to the underlying action or the dissolution proceeding and there is no evidence of his presence in Lisa's life to date.

Throughout the course of their marriage, petitioner and respondent represented petitioner was Lisa's biological father. Petitioner alleges respondent asked petitioner not to adopt Lisa. Petitioner further alleges, however, respondent asked petitioner to present himself as Lisa's biological father. Toward this end, Lisa assumed petitioner's last name, Schlam. Petitioner told Lisa and members of his community that Lisa was his biological daughter. The trial court found that petitioner had both "acknowledged" and assumed financial responsibility for Lisa. Petitioner alleges that he maintained a "close relationship" with Lisa. Lisa believed petitioner to be her "father" from the time she first understood that concept until January 1993.

Petitioner and respondent assumed joint custody of Lisa under the agreement. Petitioner filed a "Petition for Dissolution of Marriage" (petition for dissolution) on July 20, 1990. The petition for dissolution did not cite to any section of the Act or other statute. Appearing before the trial court, respondent waived her right to obtain counsel and proceeded *pro se*; petitioner was represented by counsel. In paragraph six of the petition for dissolution, petitioner admitted that Lisa was not his biological child and asserted that "it is in the best interests of the *parties' child* that joint legal custody be awarded to the parties." (Emphasis added.) The trial court expressly found that it had jurisdiction over "the parties hereto and the subject matter hereof." Additionally, the trial court found, and both parties agreed, that it was in Lisa's best interest that joint custody be awarded. On September 15, 1990, the parties executed the agreement. The agreement was incorporated as part of the trial court's "Judgment for Dissolution of Marriage" (judgment). The parties' marriage was dissolved on October 19, 1990.

The parties abided by the agreement for approximately 27 months. According to the guardian *ad litem*'s report, Lisa's time was

divided equally between petitioner and respondent. While Lisa resided with petitioner, he was responsible for all her financial needs. The judgment provided petitioner would carry Lisa on his health and hospitalization insurance. The judgment also provided petitioner was to pay $1,200 in monthly maintenance to respondent for the first 18 months following the dissolution of marriage; thereafter, petitioner was required to pay $400 in maintenance each month. Although neither the agreement nor the judgment made any provision for the payment of child support, the record establishes the parties agreed the amount of maintenance was selected to provide for Lisa's needs as well as respondent's needs.

In January 1993, petitioner was no longer allowed to exercise the custody rights granted him in the agreement. In his brief, petitioner states that in January 1993 he set off against maintenance a debt respondent owed him. Petitioner alleges the day after this setoff respondent began refusing to allow Lisa to visit him. Conversely, the guardian *ad litem*'s report states Lisa has refused to visit petitioner following an alleged "physical confrontation" or "fight" between Lisa and petitioner in January 1993. In either case, Lisa became aware petitioner was not her biological father during this time.

The reason petitioner is no longer able to exercise custody rights pursuant to the agreement is irrelevant to whether the trial court erred in finding the agreement and portions of the judgment void *ab initio*. Actions allegedly occurring in 1993, whether financial dealings between petitioner and respondent or an altercation between petitioner and Lisa, could not retroactively strip the trial court of jurisdiction over the initial proceeding. At the same time, we acknowledge that financial dealings and alleged altercations involving petitioner may be relevant to what type of custody arrangement is in Lisa's best interest. The issue presented by the parties, however, is not whether changed circumstances have made modification of custody "necessary to serve the best interest of the child." (750 ILCS 5/610(b) (West 1992).) The issues are jurisdiction and standing.

■ Petitioner first contends the trial court erred because respondent's petition to declare void was estopped as a collateral attack upon the trial court's judgment. We disagree. In his brief, petitioner argues the doctrine of "[c]ollateral estoppel provides that [the trial court's jurisdiction], *having already been addressed by a court of competent jurisdiction*, may not be relitigated in a later action between the same parties." (Emphasis added.) The operation of collateral estoppel necessarily presupposes the challenged order was entered by a court of competent jurisdiction. (See *Simcox v. Simcox* (1989), 131 Ill. 2d 491, 496-97 (stating collateral estoppel only bars

the relitigation of an issue between the same parties or their privies if the challenged order was entered by a court of competent jurisdiction).) Respondent's petition to declare void questions whether the trial court has jurisdiction to award joint custody of Lisa. Petitioner's argument, therefore, assumes the answer to respondent's petition to declare void, then uses that answer to argue respondent should not be allowed to ask the question in the first place. This is a tautology. Collateral estoppel does not prohibit a subsequent motion attacking a trial court's jurisdiction.

■ A court without jurisdiction has no authority to act. Subject-matter jurisdiction refers to whether a court has the power to hear the type of case before the court. (*Lemons v. Lemons* (1978), 57 Ill. App. 3d 473, 476.) Personal jurisdiction refers to whether a court has acquired the ability to apply its subject-matter jurisdiction to an individual. (*In re Shawn B.* (1991), 218 Ill. App. 3d 374, 378.) Orders entered by a court lacking jurisdiction are void *ab initio*. (*In re M.M.* (1993), 156 Ill. 2d 53, 64.) The general rule, therefore, is questions concerning a trial court's jurisdiction may be raised collaterally or directly at any time. *Robinson v. Human Rights Comm'n* (1990), 201 Ill. App. 3d 722, 726.

■ Parties to a dissolution proceeding may, however, under certain circumstances, be estopped from asserting the trial court lacked either personal or subject-matter jurisdiction. It has long been held in Illinois that accepting benefits of a dissolution judgment may "estop" a party from subsequently challenging the validity of that judgment. (*Grimm v. Grimm* (1922), 302 Ill. 511, 513; *In re Marriage of Paulius* (1985), 131 Ill. App. 3d 343, 347 (and case cited therein); *In re Marriage of Gryka* (1980), 90 Ill. App. 3d 443, 446.) Estoppel by remarriage is distinct from traditional notions of equitable estoppel. (*In re Marriage of Paulius*, 131 Ill. App. 3d at 347-48.) Detrimental reliance need not be shown by the party opposing a motion challenging the validity of a dissolution judgment. *In re Marriage of Paulius*, 131 Ill. App. 3d at 348.

■ Estoppel by remarriage serves several purposes. It protects the marital status and character of third parties who marry believing their spouse has been granted a valid and final divorce. (*In re Marriage of Gryka*, 90 Ill. App. 3d at 446, citing *McDonald v. Neale* (1962), 35 Ill. App. 2d 140, 151.) Estoppel by remarriage also ensures a child, one or both of whose parents divorced before remarrying, has the benefit of a lawfully married mother and father. (*In re Marriage of Gryka*, 90 Ill. App. 3d at 446, citing *McDonald v. Neale*, 35 Ill. App. 2d at 151.) Finally, estoppel by remarriage protects the rights of other persons whose rights have been finalized by the dissolution

judgment. (*In re Marriage of Gryka*, 90 Ill. App. 3d at 446, citing *McDonald v. Neale*, 35 Ill. App. 2d at 151.) Two policies underlie these considerations. First, the rights and position of a third party dependent on the validity of a dissolution judgment should not be put in jeopardy by a motion to vacate. Second, it is fundamentally and legally inconsistent for divorced parties to accept the benefits of a dissolution judgment, while later asserting the judgment granting them those benefits never existed as a matter of law.

■ Estoppel by remarriage does not apply to the present case. The cases cited by petitioner are distinguishable. The majority of cases cited by petitioner concern a party attempting to find the entire dissolution judgment void for lack of jurisdiction in order to escape obligations flowing from some portion of the judgment. (See, *e.g.*, *Varap v. Varap* (1966), 76 Ill. App. 2d 402, 409.) In the present case, respondent did not assert the entire judgment was void *ab initio*; respondent only challenged those portions of the judgment granting custody rights to petitioner. Most importantly, the petition to declare void does not assert inconsistent legal rights. The dissolution of the parties' marriage and property settlement do not draw their validity from the portions of the judgment found to be void *ab initio*. Neither the judgment nor agreement makes any provision for the payment of child support, even though the record indicates some unknown portion of the maintenance award was provided for Lisa's needs. Respondent's right to remarry is independent of the custody award.

■ Equitable estoppel is distinct from both the doctrines of collateral estoppel and estoppel by remarriage. We have stated "[e]stoppel arises when a party, by his words or conduct, intentionally or through culpable negligence, induces reasonable reliance by another on his representations and thus leads the other, as a result of that reliance, to change his position to his detriment." (*Zink v. Maple Investment & Development Corp.* (1993), 247 Ill. App. 3d 1032, 1039.) The purpose of equitable estoppel is to prevent fraud and injustice. *Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 276.

■ Respondent is estopped from attacking the agreement. Respondent intentionally led petitioner to believe he would remain a part of Lisa's life as a joint custodian. In reliance on the agreement and respondent's representations to the original trial court, petitioner undertook to (1) provide child support in the form of an increased amount of maintenance; (2) continue to pay a maintenance award even after respondent's remarriage; (3) have Lisa reside in his home for approximately one-half of each week; (4) pay for all of Lisa's expenses while she resided in his home; and (5) provide for Lisa's health care coverage. Considering the circumstances as a whole, it would be

unjust to allow respondent to argue the agreement was void *ab initio.* We hold respondent may not attack the agreement's validity.

We address the questions of jurisdiction and standing raised by the parties, even though respondent is estopped from attacking the validity of the agreement, because of the peculiar facts of this case. Petitioner argues the trial court erred in reversing the portions of the original judgment finding petitioner had standing and the original trial court had jurisdiction over Lisa. Initially, we note neither the order of November 23, 1993, granting respondent's petition to declare void nor the original judgment itself contains a finding that petitioner lacked standing to petition for custody of Lisa. Respondent did not raise the question of standing as an affirmative defense during the dissolution proceeding or in her petition to declare void; neither did the trial court, at any point in the present case, question petitioner's standing.

■ We determine the original trial court had jurisdiction to award joint custody. The Uniform Child Custody Jurisdiction Act (750 ILCS 35/1 *et seq.* (West 1992)) sets forth the circumstances under which a circuit court possesses the jurisdiction necessary to make a "child custody determination by initial or modification judgment" (750 ILCS 35/4(a) (West 1992)). If, as respondent contends, personal jurisdiction over the child were required, a trial court hearing a dissolution case would never be able to make a custody award unless the child were served with summons and made a party. This is not the case. Because Illinois was Lisa's home state "at the time of commencement of the [dissolution] proceeding" (750 ILCS 35/4(a)(1)(i) (West 1992)), the original trial court had the jurisdiction necessary to determine Lisa's custody.

"Jurisdiction," as the term is used in section 601 of the Act, refers to a standing requirement for persons petitioning for child custody. In distinguishing "jurisdiction" under section 601 from traditional jurisdiction, the supreme court has found the General Assembly used "jurisdiction" in section 601 to limit the circuit court's "exercise of existing jurisdiction." (*Siegel v. Siegel* (1981), 84 Ill. 2d 212, 221.) The court further defined the nature of "jurisdiction" under section 601 in *In re Custody of Peterson* (1986), 112 Ill. 2d 48. *Peterson* examined the following portion of section 601:

"(b) A child custody proceeding is commenced in the court:

(1) *by a parent,* by filing a petition:

(i) for dissolution of marriage or legal separation or declaration of invalidity of marriage; or

(ii) for custody of the child, in the county in which he is permanently resident or found; or

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, *but only if he is not in the physical custody of one of his parents.*" (Emphasis added.) (750 ILCS 5/601(b) (West 1992).) The court held section 601(b)(2) requires nonparents seeking custody of children have standing to maintain such a petition. (*In re Custody of Peterson,* 112 Ill. 2d at 52.) In light of the holdings of *Siegel* and *Peterson,* and in an effort to construe section 601 uniformly, we find subsection (b)(1), like subsection (b)(2), contains a standing requirement. Parties petitioning for child custody pursuant to section 601(b)(1) have standing only if they are "parents" within the meaning of the Act.

Respondent argues petitioner lacked standing under section 601(b)(2) to petition for joint custody of Lisa. Respondent, however, failed to raise the issue of lack of standing before both the original trial court and the court that granted respondent's petition to declare void. Lack of standing under section 601(b)(2) of the Act is an affirmative defense. (*In re Custody of McCarthy* (1987), 157 Ill. App. 3d 377, 380.) As an affirmative defense, lack of standing is subject to section 2—619(a)(9) of the Civil Practice Law (735 ILCS 5/2—619(a)(9) (West 1992)). Lack of standing under section 601(b)(2) of the Act is waived, therefore, unless raised by a motion to dismiss " 'within the time for pleading.' " (*McCarthy,* 157 Ill. App. 3d at 380, quoting Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a) (now codified, as amended, at 735 ILCS 5/2—619(a) (West 1992)).) Because section 601 of the Act is not jurisdictional in the traditional sense, we find *McCarthy* should also be applied to standing challenges arising under section 601(b)(1). Parties must bring a motion to dismiss within the time for pleading if they wish to challenge the standing of petitioners acting pursuant to section 601(b)(1). This motion must allege that the petitioner is not a "parent" within the meaning of the Act.

Respondent not only failed to raise lack of standing, but she also implicitly represented to the trial court petitioner had standing to petition for joint custody. Respondent and petitioner both signed the agreement. Respondent and petitioner both presented the agreement to the trial court. Respondent and petitioner both requested the trial court to incorporate the agreement as part of the dissolution decree. Respondent and petitioner both asserted joint custody was in Lisa's best interests. These are not the actions of an individual who did not wish petitioner to have, let alone be able to petition for, joint custody.

Respondent may not assert lack of standing for the first time nearly four years after the time for pleading has expired. Affirmative defenses such as lack of standing serve the valuable purpose of allow-

ing respondents to dispose summarily of issues of law or simple questions of fact. (*McCarthy*, 157 Ill. App. 3d at 381.) These defenses allow parties and courts to avoid issues and causes that could be dispensed with quickly. This helps better marshall the finite resources of both courts and litigants. In light of this policy, even if respondent were not estopped from attacking the judgment, she would be found to have waived petitioner's alleged lack of standing.

Our determinations that (1) respondent is estopped from attacking the validity of the agreement, and (2) even if respondent were not estopped, the trial court erred in finding the agreement and portions of the judgment void *ab initio* for lack of jurisdiction or standing obviate the need to address petitioner's final two contentions.

In closing, we note nothing in this opinion should be construed as terminating the parental rights of Lisa's biological father. The judgment and the agreement incorporated by the judgment are silent on the subject of Lisa's biological father. In its order of November 23, 1993, the trial court stated "it would be against the public policy of this State to allow a parent to bargain away the rights of a nonrepresented [m]inor [c]hild to receive something in return." This is not what occurred in the present case. Respondent did not "bargain away" Lisa's rights; respondent acquired additional rights for Lisa.

For the foregoing reasons the judgment of the circuit court of De Kalb County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN, P.J., and THOMAS, J., concur.