No. 3-03-0842

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2004

In re MARRIAGE OF   ) Appeal from the Circuit Court of the

DONALD L. ENGELKENS, JR.,   ) Fourteenth Judicial Circuit,

      ) Whiteside County, Illinois,

Petitioner-Appellant,   )

  
   )

and     ) No. 98-D-024

   ) 

JERRI ENGELKENS,   ) 

n/k/a Jerri Burden,   ) 
The Honorable

   ) Timothy Slavin,

Respondent-Appellee.   ) 
Judge Presiding.

______________________________________________________________________________

JUSTICE McDADE delivered the opinion of the court:

______________________________________________________________________________

Petitioner, Donald L. Engelkens, appeals the order of the circuit court for the Fourteenth Judicial Circuit, Whiteside County, Illinois, denying his request to terminate the visitation of respondent, Jerri L. Engelkens, n/k/a Jerri Burden, with Donald’s son, Jacob Engelkens.  For the reasons that follow, we reverse.

BACKGROUND

Donald and Jerri married in July 1995.  In February 1998, the circuit court entered a judgment of dissolution of the marriage.  According to the judgment of dissolution and the marital settlement agreement incorporated therein, one child, Tommy L., was born to Jerri during the marriage.  The settlement agreement stated that Donald agreed to permit Jerri a reasonable opportunity to visit Jacob Engelkens, Donald’s son from a previous relationship.  In November 2000, Donald learned he was not Tommy’s biological father.  In March 2002, Donald and Jerri entered a temporary agreed order stating Jerri’s visitation with Jacob was to occur every other Saturday or Sunday between noon and 7 p.m.  In March 2003 Donald petitioned the court to terminate his support for Tommy and to terminate Jerri’s visitation with Jacob.  The petition argued that the statute granting visitation to stepparents had been found unconstitutional.  The issue of support was not part of the hearing below and is not part of this appeal.

In April 2003, at the hearing on the petition to terminate visitation with Jacob, only Jerri testified.  Donald and Jerri lived together before they were married.  Jacob came to live with them when he was approximately four weeks old. 
 Jerri testified that, after the divorce and approximately one year before the date of the hearing, she noticed marks or bruises on Jacob’s body.  The marks were on Jacob’s back and appeared to have been made by a belt.  Jerri made a report to the state.  Jerri also noticed two bruises on Jacob’s legs and knees approximately six months before the hearing and a bruise by his eye.  Jerri notified Jacob’s school.  Jerri also testified she had confronted Donald regarding "mental abuse" of Jacob in that when Jerri had bought gifts for Jacob, Donald would "cut up" the item in front of him or make Jacob "cut it up."  Specifically, a snowboard and a deck of "Uno" cards.  Jerri testified that while the parties’ divorce was pending, Jacob lived with Jerri for a six-month period.  
Jerri testified she voluntarily provided Jacob with health insurance continuously beginning in May 1998.  Jerri never adopted Jacob.
  Jerri reported the suspected abuse to the state and Jacob’s school, making seven reports over a 2 ½ year period.
 

Following argument, the trial court stated "the parties’ agreement *** is based wholly or in part on [the] statute."  In its written order, the trial court found as follows:

"1. [A] prior agreement for stepparent visitation was entered into by the parties on March 21, 2002.

2. The previous agreement of the parties [does not] defeat the unconstitutionality of the statute regarding stepparent visitation.

3. [T]here has been presented unrebutted evidence of [Donald’s] physical and mental abuse of the minor child, Jacob.

4. [Donald] is unfit in this forum as it relates to this Petition brought before this Court.

5. Due to the unfitness of [Donald], this matter and the agreement of the parties falls within the narrow exception to the unconstitutionality of the statute.

6. The statute in these circumstances is constitutional.  Therefore, the agreement entered into by the parties is based upon a constitutional statute.

7. The court does not find any substantial change in circumstances has been shown which would warrant a modification of the previous agreement of the parties."

The court ordered that the petition to terminate visitation was denied.  This appeal followed.

ANALYSIS

Donald argues the circuit court lacked jurisdiction to enforce stepparent visitation because the statute governing stepparent visitation is unconstitutional.  Jerri asserts that Donald "fails to recognize the authority of the trial court to utilize the narrow exception, delineated by the cases in the grandparent arena, when a stepparent can rebut the presumption that a parent acts in the best interest of his child."  Jerri also argues that no court has declared section 607(b)(1.5) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(b)(1.5) (West 2002)) facially unconstitutional and that statutes carry a strong presumption of constitutionality.
 
 
The trial court has broad discretion in fashioning the terms of visitation and those terms will not be overturned absent proof that the court has abused its discretion.  
In re Marriage of Roberts
, 151 Ill. App. 3d 65, 67, 503 N.E.2d 363, 364 (1986).  Whether the circuit court has subject matter jurisdiction is a question of law, which we review 
de novo
.  
In re Marriage of Chrobak
, 349 Ill. App. 3d 894, 897, 811 N.E.2d 1248, 1252 (2004).
  

The legislature codified grandparent and stepparent visitation rights in sections 607(b)(1) and 607(b)(1.5) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/607(b)(1), (b)(1.5) (West 2002)), which read as follows:

Grandparent provisions
:

"(b)
(1) 
The court may grant reasonable visitation privileges to a grandparent, great-grandparent, or sibling of any minor child upon petition to the court by the grandparents or great-grandparents or on behalf of the sibling, with notice to the parties required to be notified under Section 601 of this Act
, 
if the court determines that it is in the best interests and welfare of the child
, and may issue any necessary orders to enforce such visitation privileges.  Except as provided in paragraph (2) of this subsection (b), a petition for visitation privileges may be filed under this paragraph (1) whether or not a petition pursuant to this Act has been previously filed or is currently pending if one or more of the following circumstances exist:

(A) the parents are not currently cohabiting on a permanent or an indefinite basis;

(B) one of the parents has been absent from the marital abode for more than one month without the spouse knowing his or her whereabouts;

(C) one of the parents is deceased;

(D) one of the parents joins in the petition with the grandparents, great-grandparents, or sibling; or

(E) a sibling is in State custody.
"  (Emphasis added.)  750 ILCS 5/607(b)(1) (West 2002).

Stepparent provisions
:

"(1.5) 
The Court may grant reasonable visitation privileges to a stepparent upon petition to the court by the stepparent, with notice to the parties required to be notified under Section 601 of this Act
, 
if the court determines that it is in the best interests and welfare of the child
, and may issue any necessary orders to enforce those visitation privileges.  A petition for visitation privileges may be filed under this paragraph (1.5) whether or not a petition pursuant to this Act has been previously filed or is currently pending if the following circumstances are met:

(A) the child is at least 12 years old;

(B) the child resided continuously with the parent and stepparent for at least 5 years; 

(C) the parent is deceased or is disabled and is unable to care for the child;

(D) the child wishes to have reasonable visitation with the stepparent; and

(E) the stepparent was providing for the care, control, and welfare to the child prior to the initiation of the petition for visitation."  (Emphasis added.)  750 ILCS 5/607(b)(1.5) (West 2002).

Applying the plain language of section 607(b)(1.5) Jerri presented no evidence to support a conclusion Donald is 
unable
, by reason of his alleged acts of abuse, to care for Jacob, or that Jacob wishes to have visitation with Jerri.  Jerri merely states there is no evidence Jacob does not want visitation with her.  However, the parties entered into an agreed order granting Jerri visitation.  Therefore, the issue is not whether the statute is applicable to Donald and Jerri, but whether the court had the authority to enforce or to modify the parties’ agreement.
  The court found the agreement was based, "wholly or in part," on the statute.  Accordingly, we must determine whether the statute provides appropriate guidelines or adequate justification for the court’s interference with Donald’s parenting decision.  To do so requires us to address the constitutionality of the stepparent visitation provisions of the statute.

In 
Wickham v. Byrne
, 199 Ill. 2d 309, 320, 769 N.E.2d 1, 7-8 (2002), the Supreme Court of Illinois held that section 607(b)(1) on grandparent visitation contained a flaw similar to one noted by the United States Supreme Court in the Washington statute it addressed in 
Troxel v. Granville
, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000).  Specifically, it found that, in every case, the statute placed the parent on equal footing with the party seeking visitation rights.  In 
Troxel
, the Court found "[t]
he judge's comments suggest that he presumed the grandparents' request should be granted unless the children would be ‘impact[ed] adversely.’  In effect, the judge placed on Granville, the fit custodial parent, the burden of 
disproving
 that visitation would be in the best interest of her daughters."  (Emphasis in original.)  
Troxel
, 530 U.S. at 69, 147 L. Ed. 2d at 59, 120 S. Ct. at 2062.  
Our supreme court stated as follows:  "The Washington statute undermined the parent’s fundamental right to make decisions regarding the care and custody of her child because the parent’s decision regarding visitation was no longer presumed to be in the child’s best interests."  
Wickham
, 199 Ill. 2d at 319, 769 N.E.2d at 7.
  The court held that, similarly, "section 607(b)(1) directly contravenes the traditional presumption that parents are fit and act in the best interests of their children" because it "exposes the decision of a fit parent to the unfettered value judgment of a judge and the intrusive micro-managing of the state."  
Wickham
, 199 Ill. 2d at 320, 769 N.E.2d at 7-8.
  

Sections 607(b)(1) and (b)(1.5) both state the court may grant visitation to a grandparent or a stepparent if it determines that to do so would be in the best interest of the child.  As noted in 
Wickham
, 199 Ill. 2d at 319, 769 N.E.2d at 7, this language, on its face, places the parent on equal footing with the opposing party in their attempts to convince the court that 
visitation
 is or is not in the child’s best interest.  Our supreme court held that under no circumstances could placing a fit parent in that position pass constitutional muster.  
Wickham
, 199 Ill. 2d at 320-21, 769 N.E.2d at 8.  Accordingly, section 607(b)(1.5), containing nearly identical language, is unconstitutional on its face.  

In the case 
sub judice 
the circuit court found section 607(b)(1.5) constitutional as applied to the facts of this case because it determined Donald was unfit.  The circuit court called this a narrow "exception" to the unconstitutionality of the statute.  In declaring section 607(b)(1) facially unconstitutional, the supreme court did not state that a circuit court could nonetheless apply the statute if it found the parent unfit in proceedings on a petition for visitation.  
Further, a
n unconstitutional statute is "void 
ab initio
 (as if it never existed from its inception)."  
In re M.M.D.
, 344 Ill. App. 3d 345, 348, 800 N.E.2d 831, 833 (2003).  Therefore, a court cannot find an "exception" to the unconstitutionality of a statute.  We also note that, because the statute is not controlling, Donald’s alleged unfitness is not an issue unless it is relevant to an independent determination of Jerri’s right to visitation.  

We must now determine whether the trial court possessed some independent authority to intervene in stepparent visitation.  Jerri argues that, absent the statute, as in the grandparent visitation cases, courts should "apply great deference to a natural parent’s decision regarding care, custody and visitation," but "override [that] decision if the parent is found unfit thereby supporting the conclusion that the parent would not make the decision with the best interest of the child."  Donald responds that "[t]here is no common law stepparent visitation."
  

In 
M.M.D.
, 344 Ill. App. 3d 345, 800 N.E.2d 831, this court rejected an argument the circuit court lacked jurisdiction to enforce grandparent visitation.
  There
, this court held "the unconstitutionality of subsections 607(b)(1) and (b)(3) [did] not void the [grandparents’s] visitation rights" because section 607(b)(1) failed to "supercede the common law," which provided visitation rights to grandparents upon a showing of special circumstances.  
M.M.D.
, 344 Ill. App. 3d at 349, 348, 800 N.E.2d at 833-34
.
  Jerri argues Illinois common law provides that stepparents are entitled to visitation under certain circumstances.  
Hawkins v. Hawkins
, 102 Ill. App. 3d 1037, 1039, 430 N.E.2d 652, 653 (1981) ("a
 long-standing common-law tradition clearly established the circumstances under which parents, grandparents and others might be entitled to court-ordered visitation with a minor child).
  However
, each case cited in 
Hawkins
 for this proposition involved the visitation rights of a natural parent, with the exception of 
Chodzko v. Chodzko
, 66 Ill. 2d 28, 30, 360 N.E.2d 60 (1976), which involved the maternal grandfather.

Jerri cites 
In re Marriage of Schlam
, 271 Ill. App. 3d 788, 648 N.E.2d 345 (1995), and 
In re Marriage of Slayton
, 292 Ill. App. 3d 379, 685 N.E.2d 1038 (1997), as examples of special circumstances calling for stepparent visitation.  Both 
Schlam
 and 
Slayton
 predated 
Troxel
 and 
Wickham
.  In 
Schlam
, 271 Ill. App. 3d at 792, 648 N.E.2d at 348, the stepparent challenged the biological mother’s attempt to have declared void a joint custody agreement incorporated into the parties’ judgment of dissolution.  Applying the doctrine of equitable estoppel, the court held the biological mother was estopped from attacking the joint custody agreement because the stepparent changed his position to his detriment in reliance on the agreement
.  
Schlam
, 271 Ill. App. 3d at 794, 648 N.E.2d at 349-50.  

In 
Slayton
,
 the court applied the standard for visitation applicable to a "‘
parent
 not granted custody of the child.’" (Emphasis added.)  
Slayton
, 292 Ill. App. 3d at 384, 685 N.E.2d 1038, quoting 750 ILCS 5/607(a) (West 1994).
  The court refused to "fashion a different standard for nonbiological parents" because (1) the biological parents had waived any argument that a different standard was constitutionally compelled, (2) the court "doubt[ed]" applying section 607(a) violated the biological parents’ constitutional rights, and (3) the court saw "no principled way to legislate" a new standard.  
Slayton
, 292 Ill. App. 3d at 385-86, 685 N.E.2d at 1042-43.  

Regarding the biological parents’ constitutional right to control their child, the 
Slayton
 court stated that "the long recognized rights of presumed fathers can hardly be said to offend the United Stated Constitution."
  
Slayton
, 292 Ill. App. 3d at 386, 685 N.E.2d at 1043.  In 
Slayton
, the stepparent had the right to seek custody because "the presumption of paternity 
ha[d] not been rebutted
 as of the time [he] first sought custody."  (Emphasis added.)  
Slayton
, 292 Ill. App. 3d at 385, 685 N.E.2d at 1042.
  Noting the distinction between the 
right
 to visitation under section 607(a) and the establishment of visitation as a 
privilege
 under section 14(a)(1) of the Illinois Parentage Act of 1984 (750 ILCS 45/14(a)(1) (West 1994)), one justice stated he "would find *** [that] section 607(a) does not apply to a person in a status similar to [the stepparent]" in that case.  
Slayton
, 292 Ill. App. 3d at 390, 685 N.E.2d at 1045 (McCullough, J., dissenting).  Regardless, Jerri never enjoyed such a presumption, so the 
Slayton
 rationale as to why treating a stepparent as a "parent" would not violate the biological parent’s rights is inapplicable.

The cases on which Jerri relies do not clearly state a common law right to stepparent visitation under special or any other circumstances.  On the contrary, "[e]
ncompassed within the well-established fundamental right of parents to raise their children is
 the right to determine with whom their children should associate."  
Lulay v. Lulay
, 193 Ill. 2d 455, 473-74, 739 N.E.2d 521, 531 (2000).
  
In 
Koelle v. Zwiren
, 284 Ill. App. 3d 778, 784, 672 N.E.2d 868, 872 (1996), the court held "a
warding custody or visitation rights to a nonparent over the objection of a natural parent is permissible if it would be in the best interests of the child."  
That conclusion was based on the Supreme Court of Illinois’s statement in 
In re Custody of Townsend
, 86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234 (1981), that the presumption that the right or interest of a natural parent in the care, custody, and control of a child is superior to the claim of a third person "i
s not absolute and serves only as one of several factors used by courts in resolving the ultimately controlling question of where the best interests of the child lie
."  

However, 
Townsend
 involved a custody dispute and was therefore controlled by the Dissolution Act, which includes legislatively determined guidelines for when the state may interfere with parents’ rights.
  The fundamental rights of parents can be interfered with by the state based on specified showings as required by statute, and the showing required varies based on the type of action.  See 
In re Marriage of Roberts
, 271 Ill. App. 3d 972, 981, 649 N.E.2d 1344, 1350 (1995) ("best interests of the child" is the basis for determining custody under the Dissolution Act, while a stronger showing than best interests is required to remove custody from a natural parent under the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 801-1 
et seq.
); but parents’ rights can be set aside more easily under the Probate Act of 1975 (755 ILCS 5/1 
et seq.
 (West 1992))).  
In the context of visitation by a stepparent, however, Illinois common law provides no guidelines for interfering with the superior right of a parent.  The legislature attempted to enact such guidelines, but their enactment is facially unconstitutional.  Based on the well-established law, and the lack of a clear statement of an exception for stepparents, we find that stepparents possess no common law visitation rights.  

Accordingly, the trial court lacked the power to independently force Donald to continue to allow Jerri visitation.  The parties did, however, have a potentially binding agreement regarding visitation.  In this regard, Jerri argues Donald is estopped from attacking the circuit court’s jurisdiction to enforce the parties’ settlement agreement because Donald has accepted substantial benefits from the judgment.  However, she does not claim she relied on the parties’ settlement agreement to her detriment
.  Estoppel by remarriage does not require the party opposing a challenge to the validity of a judgment of dissolution to show detrimental reliance.  
Schlam
, 271 Ill. App. 3d at 793, 648 N.E.2d at 349.
  However, estoppel by remarriage does not apply in this case because the challenge is not to the judgment of dissolution as a whole, but only that portion granting Jerri visitation.  See 
Schlam
, 271 Ill. App. 3d at 794, 648 N.E.2d at 349
.  

"E
quitable estoppel is distinct from both the doctrines of collateral estoppel and estoppel by remarriage.  We have stated ‘estoppel arises when a party, by his words or conduct, intentionally or through culpable negligence, induces reasonable reliance by another on his representations and thus leads the other, as a result of that reliance, to change his position to his detriment.’"  
Schlam
, 271 Ill. App. 3d at 794, 648 N.E.2d at 349
, quoting 
Zink v. Maple Investment & Development Corp., 
247 Ill. App. 3d 1032, 1039, 617 N.E.2d 1269, 1274-75 (1993).  Although Jerri argues she continued to provide health care coverage for Jacob, she makes no argument she was induced to do so based on Donald’s representations.  Therefore, Donald was not estopped from attacking the parties’ agreement.

Donald’s agreement to allow Jerri visitation was nothing more than a gratuitous undertaking.  The March 2002 agreed order, setting the times for Jerri’s visitation, states it was only a temporary order.  Moreover, Jerri failed to establish detrimental reliance on the parties’ agreement or the order.  
"A
 promise founded upon considerations of affection or gratitude is a beneficence and cannot be the foundation for a legal action."  
Schwerdt v. Schwerdt
, 141 Ill. App. 386, 389 (1908).
   We find the parties’ agreement "
is a 
nudum pactum
 and cannot be enforced."  
Schwerdt
, 141 Ill. App. at 389.  Therefore, Donald, as natural parent, had the right to end Jerri’s visitation.

CONCLUSION

The trial court’s order denying the petition to terminate visitation should be reversed.
 Reversed. 

BARRY, J., concurs.

JUSTICE SCHMIDT, dissenting:

I respectfully dissent.  This was not a court-ordered stepparent visitation but, rather, a negotiated agreement.  I believe that by agreeing to give Jerri visitation, Donald waived any argument that the stepparent visitation statute is unconstitutional.  It is not unconstitutional to bargain for stepparent visitation.  I would hold that the best interest of the child is the determinative factor in this case.  There is nothing in the record to indicate that continued visitation with Jerri would not be in the best interest of the child.

Again, it was Donald who asked the court to modify the agreement and yet he offered no evidence at the hearing.  Even had Jerri not testified at all, I do not see how the trial court could have done anything other than deny Donald's petition.

Furthermore, Donald has enjoyed many benefits from the agreement, not the least of which is the fact that Jerri covered the child on her healthcare insurance for the last five years.  Theories of equitable estoppel should prevent Donald from now attacking the agreement, absent evidence that the best interest of the child required him to do so.

I therefore respectfully dissent.