## J. A. CHAMBERS v. BALT. & O. R. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 7, 1890—Decided January 5, 1891.

(*a*) Under a sealed agreement with the owner of lands subject to a mortgage, a railroad company, for the benefit of the owner's business, constructed a Y upon the property, in consideration of a sum certain and the unrestricted right to turn its trains thereon whenever necessary.

(*b*) Afterward, the land was sold upon a judgment obtained on the mortgage, and the purchaser and those acquiring his title recognized the continued use of the Y by the railroad company, under the agreement, for a period of twenty years after its construction:

1. A master so finding, on a bill filed by the landowner to compel the

company to remove the Y, after such an acquiescence in its joint use
for the period stated, it was not error for a court of equity to decree
that the plaintiff's bill should be dismissed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 235 October Term 1890, Sup. Ct.; court below, No.
233 July Term 1890, C. P. No. 2, in Equity.

On May 16, 1889, James A. Chambers filed a bill in equity
against the Baltimore & Ohio Railroad Company and the Pitts-
burgh & Connellsville Railroad Company, praying upon the
facts therein averred, that the defendants be enjoined from en-
tering upon certain lands of the plaintiff " and laying down or
maintaining their tracks, switches, or sidings thereon," and
for further relief. On May 25th, the defendant companies
filed a cross-bill against the plaintiff, praying, upon the facts
therein averred, " that it be adjudged and decreed that your
orators have the right to maintain and use said tracks over and
upon the aforesaid property of the defendant, in the manner
and for the purposes the same have been heretofore maintained
and used ; " for an injunction restraining the defendant (plaint-
iff) from interfering with the plaintiffs' (defendants') peace-
able possession of the land for said purpose, and for general
relief.

Motions for preliminary injunctions having been heard on
the bills and affidavits read, on June 1, 1889, the court refused
the motion therefor of the plaintiff (in the original bill) and
granted the motion therefor of the defendants (plaintiffs in the
cross-bill).

The cause having been put at issue by answers and replica-
tions, it was referred to *Mr. Thomas Herriott*, as examiner and
master, who, on September 29, 1890, filed a report finding, in
substance, that on May 11, 1869, persons doing business as
Michaels, Roehling & Co., owners in fee of the locus in quo
containing a glass-works, executed a mortgage thereon to John
Floyd, trustee ; that, on August 2, 1868, Michaels, Roehling
& Co., as parties of the first part, executed an agreement under
seal with the Pittsburgh & C. R. Co., as party of the second
part, containing the following provisions :

" Witness, that in consideration of the covenants hereinafter contained, the party of the second part doth hereby agree to construct upon the property of the parties of the first part, situate in the borough of McKeesport, in said county, what is commonly called a railroad Y; and, in so doing, to grade and complete the same and furnish all materials used in the construction thereof.

" In consideration of the foregoing agreement, the parties of the first part covenant and agree that the party of the second part shall have the free and unrestricted right to turn trains on said Y whenever necessary; that if, said Michaels, Roehling & Co. should at any future time abandon their present location, the party of the second part shall have the right to continue using said Y, as located and constructed by said second party, without any interference on the part of their successors or assigns, and that they will, upon the completion of said Y, or the day upon which it is open for use, pay unto the party of the second part $819.41.

" And it is also agreed by the parties of the second part that they will deliver cars on the Y, at the factory of the parties of the first part, and that said cars, containing lime, sand, soda-ash, etc., for the manufacture of glass, shall be delivered to parties of the first part as they may need them on the Y to load their glass; said deliveries to be made with reasonable promptness.

" And it is also agreed that the parties of the second part shall not allow trains to stand on the Y, but shall keep it clear except in turning trains and putting on cars.

" Also, the parties of the second part shall allow to any party succeeding said parties of the first part, at any future date, should they leave the location, the same privileges that are now granted to the parties of the first part, and be bound by this agreement with such party or parties.

" The said first party for themselves and assigns, agree that no part of said Y shall be used in loading and unloading cars, or otherwise, so as to hinder the turning of the trains thereon by said second party."

The master found, further, that Michaels, Roehling & Co., failed in December, 1869, and, under a levari facias to No. 58 January Term 1870, issued upon a judgment on the mortgage

referred to, the real estate was sold to John Floyd, trustee, the plaintiff in the writ; that, in the levy of the sheriff and in his deed delivered, there was described, as one of the improvements of the real estate levied upon, the following: "Also, there is a Y from the Pittsburgh & Connellsville railroad into the works, where materials of all kinds can be brought in, and the manufactured articles loaded from the packing room;" that, by various mesne conveyances in fee, the property became vested in James A. Chambers; that in 1878, the railroad company applied to said Chambers for a deed granting to it the perpetual right of way over the Y as then located, which the plaintiff declined to grant, saying that the Y might remain until he should desire otherwise; that from October, 1879, until July, 1884, the plaintiff himself operated the glass works on the property, using the Y in conjunction with the railroad company in accordance with the agreement under which it was constructed; and that the glass works, afterwards until 1888, were operated by Stewart, Estep & Co., the joint use of the Y continuing. The report then proceeded:

On March, 14, 1889, the plaintiff notified the Baltimore & O. R. Co., the successors to the rights and duties of the Pittsb. & C. R. Co. to remove this Y off. plaintiff's land, and the railroad not doing this, on May 11, 1889, he tore up and removed part of the Y off his land. The railroad attempted to relay the Y, and the plaintiff filed the bill, asking that the railroad be restrained from entering on his land or maintaining their tracks, switches or sidings thereon. To the same number and term the railroad filed a cross-bill asking that it be decreed that it, the railroad, had a right to maintain this Y track as it was prior to May 11, 1889.

The plaintiff contends that, as the lien of his mortgage was prior to any rights the railroad had under its agreement with Michaels, Roehling & Co., the sheriff's sale of the property divested all rights of the railroad company to keep or maintain their switch, and that he is entitled to have the Y removed. The railroad claims that, as it was in possession at the time the scire facias on the mortgage was issued and was not notified as terre-tenant, it can now make any defence that it could have made to the scire facias; and that the plaintiff in the mortgage was in equity bound to sell first all the property

covered by the mortgage, except that on which the Y was located.

If any defence could have been made to the mortgage, the terre-tenant can still make it; but, controlling the execution as is done under the act of assembly of April 22, 1856, P. L. 534, is not making a defence; and, as the railroad has not complied with the provisions of this act this defence must fall: Arna's App., 65 Pa. 72.

It also defends, for the reason that, after the property was sold by the sheriff, the purchaser and his grantees for more than twenty years did not object to the use of the Y by the railroad, but acquiesced in its use by the railroad, and used it jointly with the railroad, for the purpose of receiving supplies for the factory and shipping away the finished product; that this use of the Y by the plaintiff and his antecedents in the title, was an affirmance of the rights of the railroad under the contract with Michaels, Roehling & Co.

Admitting, for the present, that the sheriff's sale divested the rights of the railroad under this agreement, the master thinks [that the purchaser at the sheriff's sale was bound, when he found the railroad in possession, to learn by what right it was there. Of this possession and the liability of the railroad under it, the purchaser has notice in the sheriff's deed to him. He might affirm the right of the railroad in possession, or require it to remove from the property, as a tenant could be required to move who held under a lease subsequent to the lien of the judgment through which the purchaser claims; but the purchaser must at once disavow the lease, for, if he accepts rent from the tenant, he affirms the lease.] [3]

This Y, as built under the agreement, was certainly a great advantage to the glass works, and the plaintiff during all the years that he operated the works made use of this Y for the benefit of his works. The master thinks [that it is now entirely too late for him to disavow the agreement, after taking advantage for so many years of its provisions benefiting him: ] [4] Campbell v. Hand, 49 Pa. 234.

Another defence made by the railroad company is that the building of this Y was an improvement that the mortgagor in possession had a right to make. The railroad certainly needed some place in McKeesport to turn its trains; and, in the case

of the Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411, it was held that, where land was taken by a railroad under the right of eminent domain, the mortgagee need not be made a party. This case has never been overruled, but the same principle has been announced in subsequent cases: Reese v. Addams, 16 S. & R. 40; Deckert's App., 5 W. & S. 342; Upper Dublin Tp. Road, 94 Pa. 126. Under these decisions, it would [seem clear that Michaels, Roehling & Co. could release damages done to the property as against the mortgagee. The railroad could have condemned the property for its own use, without being required to deliver freight at the glass works and take it away from the packing room, and have paid the damages assessed to Michaels, Roehling & Co., unless the mortgagee had taken some steps to have the money paid into court.] [5] If they could thus release the railroad from all damage, to the great injury perhaps of the mortgagee, [it is very clear they could make an agreement that would bind the property, when the agreement was of great benefit to the mortgagees.] [6]

The master thinks there is another reason sufficient to entitle the railroad to maintain this Y. The property was levied on as a tract of land on which was this Y; it was sold in the same way, and the purchaser bought a certain tract of land on which was a Y. Whether the Y was a benefit or a burden to the property, the purchaser got just what he bought. It seems perfectly clear that the Y was a great benefit to the property; but, even if it was a damage, under the ruling in Oliver v. Railway Co., 131 Pa. 408, [the railroad could still ask for viewers to assess the damages done by the entry in 1869, as of that date. The damages, if any should be assessed, would not be paid to the plaintiff in this bill under any circumstances, and he could not have any interest therein.] [a]

The master is therefore of opinion [that the bill of James A. Chambers should be dismissed at his costs, and that the first prayer of the cross-bill should be granted.] [7]

To the foregoing report, the plaintiff filed various exceptions, alleging error in the portions embraced in [ ] [3 to 6 a 7] After argument of these exceptions before the court in banc, the following opinion was filed: EWING, P. J.:

The exceptions filed to the master's report, in this case, do

Opinion of the Court.

not contest the findings of fact, but do challenge the correctness of his conclusions of law thereon.

The master puts his conclusion that the plaintiff's bill should be dismissed, in part on the ground that even if there should be an assessment for damages for condemnation of the right of way for the Y, the damages would not go to the plaintiff. If the sheriff's sale cut up the agreement of Michaels, Roehling & Co. with the railroad company, and the agreement was not ratified by the purchaser, the plaintiff would, it seems to us, be entitled to damages to be assessed, if the railroad company sought to condemn the property for a right of way. As to the other grounds on which the master's conclusions are reached, it appears to us that he is supported by authority. The fifth exception [5] to the master's report is sustained. The other exceptions are dismissed.

The whole case is one in which, while the final decree is in favor of the railroad company, it should pay the costs of the proceedings. Let the decree be drawn accordingly.

—Thereupon the plaintiff took this appeal, assigning for error, inter alia:

1, 2. The entering of the final decree.

3–6. The dismissal of the plaintiff's exceptions.

*Mr. John M. Kennedy* (with him *Mr. James C. Doty* and *Mr. James R. Sterrett*), for the appellant.

Counsel cited: Washburn on Easements, 5, 18; Huff v. McCauley, 53 Pa. 206; Le Fevre v. Le Fevre, 4 S. & R. 241; Rerick v. Kern, 14 S. & R. 267; Swartz v. Swartz, 4 Pa. 353; Ebner v. Stichter, 19 Pa. 19; Dark v. Johnston, 55 Pa. 164.

*Mr. Johns McCleave*, for the appellees.

Counsel cited: Campbell v. Hand, 49 Pa. 234; Good Intent Co. v. Hartzell, 22 Pa. 277; Cumberland V. R. Co. v. Mc-Lanahan, 59 Pa. 23.

PER CURIAM:

There was a bill and a cross-bill filed in this case. The court below dismissed the original bill, and sustained the cross-bill, and decreed, inter alia, " that the plaintiffs in the cross-bill have the right to maintain and use said tracks, referred to,

mentioned, and described in said bill, over and upon the lands of the defendant, described therein, in the manner and for the purposes the same has been heretofore maintained and used." The master has found that the Y in question was put in at the request of the predecessors of the plaintiff in the title to the land, and was used for years in their business, and also by the railroad company for their own purposes. He also finds that, after the property was sold by the sheriff under the mortgage, " the purchaser and his grantees for more than twenty years did not object to this use of the Y by the railroad, but acquiesced in such use, and used it jointly with the railroad for the purpose of receiving supplies for the factory, and shipping away the finished product." Without elaborating, it would now be inequitable to require the company to take up its track. We are not considering the question in a court of law, but in a court where a decree is of grace. A chancellor cannot be called upon to make an inequitable decree.

> Decree affirmed, and the appeal dismissed, at the costs of the appellant.

