**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220405-U

Order filed March 4, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| TIMOTHY N. SCHILLER and AMY SCHILLER, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | Appeal No. 3-22-405, 3-22-0411 (cons.) Circuit No. 14-L-401 |
| HOMESERVICES OF ILLINOIS, LLC d/b/a KOENIG & STREY REAL LIVING and NANCY NAGY, | ) ) ) ) | Honorable David E. Schwartz, Judge, Presiding. |
| Defendants | ) ) | |
| (HomeServices of Illinois, LLC d/b/a Koenig & Strey Real Living, Appellee). | ) ) ) ) | |
| TIMOTHY N. SCHILLER and AMY SCHILLER, | ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| HOMESERVICES OF ILLINOIS, LLC d/b/a KOENIG & STREY REAL LIVING and NANCY NAGY, | ) ) ) ) | |
| Defendants | ) | |

_____

(HomeServices of Illinois, LLC d/b/a     )
Koenig & Strey Real Living,             )
     Appellant).                      )
                                       )

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice McDade concurred in the judgment.
Justice Hettel concurred in part and dissented in part.

_____

**ORDER**

*Held*:  The circuit court did not err in its rulings related to the parties' motion for summary judgment, motions *in limine*, and motion for judgment notwithstanding the verdict; the court erred in granting the motion for *additur* and in finding that the Illinois Wage Payment and Collection Act was not applicable to the case before it.

In this consolidated appeal, plaintiffs, Timothy and Amy Schiller, appeal the Du Page County circuit court's ruling that their claim against defendant, Koenig & Strey Real Living ("K&S"), under the Illinois Wage Payment and Collection Act ("Wage Act") was not applicable to their circumstances. K&S also appeal, arguing that the court erred in denying its motion for summary judgment and two motions *in limine*, that the jury's verdict was against the manifest weight of the evidence and the court erred in denying its motion for judgment notwithstanding the verdict, and that the court improperly awarded the Schillers' motion for *additur*. We affirm in part, vacate in part, reverse in part, and remand for further proceedings..

I. BACKGROUND

Timothy and Amy Schiller are licensed real estate brokers who became affiliated with K&S in 2010 as a result of K&S's acquisition of their family's real estate brokerage firm under its HomeServices affiliate. When the Schillers began working under HomeServices, they signed

2

separate independent contractor agreements wherein HomeServices agreed to act as the Schillers' sponsoring broker.

¶ 5        In pertinent part, Paragraph 6 of each agreement provided: "When Sales Associate shall perform any service whereby a commission is earned, said commissions shall be divided between Koenig & Stray GMAC and Sales Associate as stated in the Company Policy Manual." The Schillers also signed an addendum with their agreements outlining the commission split they would receive for each purchase contract they executed.

¶ 6        The parties executed a second addendum to the agreements on December 31, 2013. The addendum provided, in relevant part:

> "a. Term. This Second Addendum is in effect beginning January 1, 2014 and coinciding with the terms of Schiller's IC Agreement. This Second Addendum will remain in effect until the parties agree in writing to revise this Second Addendum or until either party terminates the IC Agreement;
>
> b. Commission Split. During the Term, Schiller's commission split shall be 90%. This term is strictly confidential and subject to Paragraph 6 below;
>
> c. Confidentiality. The existence of this Second Addendum and its content are strictly confidential. If Schiller discloses the existence of this Second Addendum or its contents to anyone without the prior written consent of K&S, this Second Addendum and all K&S's obligations to Schiller set forth herein automatically terminate. Specifically, in the event Schiller discloses his commission split to anyone, the commission split set forth above becomes null and void and Schiller's commission split reverts to 75%.

d. Policy Manual. Notwithstanding anything to the contrary in the IC Agreement, terms not addressed in this Second Addendum are subject to current K&S company policies, as they may change from time to time and as they are published online in the company's policy manual. Schiller acknowledges these policies and procedures are binding upon [him/her]."

¶ 7     The policy manual, as amended in August 2013, stated in relevant part:

"a. Policy. It is the policy of Koenig & Strey to charge a fee to broker associates who separate from the company, whether voluntarily or involuntarily, in exchange for releasing brokerage agreements. This policy is separate from and in some cases in addition to the company Policy on Listing Cancellation Fee which is a $500 Seller fee charged in exchange for early termination of a brokerage agreement. It is also the policy of Koenig & Strey to pay commission to terminated agents at a rate of 50% on all pending transactions closing after the agent's termination date.

b. The company shall pay commissions to terminated agents at the rate of 50%. This commission rate applies to all pending transactions that close after the termination date of any Broker Associate, unless otherwise provided in an Independent Contractor Agreement dated before September 1, 2011."

¶ 8     The Schillers terminated their agreements with K&S on March 10, 2014. They left K&S in favor of entering into a brokerage agreement with At World Properties. At the time of the separation from K&S, the Schillers had 36 open transactions under HomeServices. The last of these transactions closed in October 2014.

¶ 9        When each remaining transaction closed after the Schillers' termination date, K&S paid the Schillers 50% of the commission collected per the policy manual. When the Schillers received the commission from K&S, At World Properties paid the Schillers the difference between the commission received and what the Schillers would have received had K&S paid them 90% commission as set forth in the second addendum. The Schillers and At World Properties had reached an agreement that At World Properties would pay for the difference if K&S cut the Schillers' commissions while in discussions about the Schillers' move to At World Properties. The original offer letters between the Schillers and At World Properties outline this arrangement, but the eventual agreements signed by the Schillers do not include any provisions regarding these payments.

¶ 10        The Schillers brought suit against K&S in order to recover the commission they allege were owed in order to repay At World Properties. Their suit, filed on April 23, 2014, alleged that K&S reduced their commission from 90% to 50% on 36 real estate transactions that closed after they left HomeServices, resulting in $171,490 lost commission payments. Their complaint alleged a claim of breach of contract and a violation of the Wage Act. The complaint was later amended on June 27, 2016. In the amended complaint, the Schillers reduced their request for relief to $155,016.78 lost commissions for 30 transactions.

¶ 11        The matter spent several years in discovery procedures and pre-trial motion practice. Of note, the circuit court heard and ruled on a motion for summary judgment from each party related to the breach of contract claim. In its motion for summary judgment, K&S argued that its agreements with the Schillers were clear and unambiguous, and the documents clearly stated that the Schillers were entitled to 50% commission because once the Schillers separated from K&S,

the policy manual controlled. Since K&S already paid the Schillers their 50% commissions they had been paid in full.

¶ 12    The circuit court found that there were facts at issue that the jury must decide. It specifically pointed to the following facts in the record: (1) the second addendum created a 90% commission split during the term of the agreement; (2) the "term" of the agreement expired when the Schillers separated from K&S; (3) the policy manual, incorporated into the agreement, provided for a 50% commission split on transactions that closed after termination; and (4) testimony from Amy Schiller indicating that commission was not earned until a closing occurred. The court found that, when viewing the evidence in the light most favorable to either party, a jury could find in either party's favor, and it denied both parties' motions for summary judgment.

¶ 13    Prior to the start of trial, several motions *in limine* were filed and argued. Relevant to this appeal, K&S sought to bar any reference to an oral contract between the Schillers and At World Properties to repay At World Properties from the damages awarded in this litigation if the Schillers collected anything. K&S argued that the Schillers failed to produce any evidence detailing this agreement in discovery and should therefore be barred from referencing it. K&S also filed another motion *in limine* to bar evidence or discussion of when commission is earned for the purpose of determining what commission percentage should apply to the transactions at issue. It argued that the policy manual provided when and at what rate a terminated agent should be paid and that there should not be any discussion to the contrary. The court denied both motions, finding that they were both questions for the jury to decide.

¶ 14    The matter proceeded to trial in March 2022. The parties agreed that a jury would decide the breach of contract claim, while the court would decide the Wage Act claim. The evidence presented at trial established that the Schillers only received commissions while working for

6

K&S and did not receive a base salary. They received those commissions after a closing took place for a real estate contract that they helped execute. If a contract they procured did not close, no commissions were paid out to the Schillers. The Schillers received commission checks within a few days or a few weeks after a closing occurred.

¶ 15    The jury returned a verdict in favor of the Schillers. When determining damages, the jury wrote onto the verdict form the amount of $96,885.50. This amount in damages, in addition to the commission originally received, equaled 75% of the total commission on the real estate transactions that closed after the Schillers left K&S.

¶ 16    Both parties filed motions for judgment notwithstanding the verdict. The Schillers' motion specifically argued that the damages award was incorrect, and it included an alternative motion for *additur* or a new trial for damages to increase their award to the originally requested amount. K&S's motion argued that the jury's award indicated that it did not believe the Schillers were entitled to the 90% commission they were seeking, thus the jury did not actually believe that K&S breached the contract.

¶ 17    The circuit court ruled in the Schillers' favor regarding the motions related to the breach of contract claim and increased the amount in damages awarded to $155,016.78. The court also entered judgment in favor of K&S for the Wage Act claim, finding that the language in the second addendum did not establish any commission was owed to plaintiffs after they left HomeServices, that the 90% split was only in effect until the parties terminated their agreement, and that the policy manual only allowed for the 50% commission HomeServices already paid to plaintiffs. Specifically, the court found that:

> " [T]he language contained in the "Second Addendum" does not establish that commission was owed after the Schillers left HomeServices. Specifically, the

7

agreement provides that during the term the split shall be 90%. It also specifies that the agreement will be in effect until either party terminates the agreement. Here, there is no question that the plaintiffs terminated the agreement. When combined with the Policy Manual, the court finds that the plaintiffs have not met their burden of proof on the issue of any additional commission above the 50% that was already paid.

In addition, the court agrees with the defendant that the plaintiff[s] did not provide sufficient evidence that the claimed commissions that were paid after the termination qualify as final compensation under the Wage Act."

¶ 18 Both parties filed an appeal. The Schillers appealed the court's decision regarding the application of the Wage Act, while K&S appealed the decision related to the breach of contract claim.

¶ 19 II. ANALYSIS

¶ 20 This matter involves two appeals. In appeal under docket number 3-23-0411, K&S appealed, raising the following arguments: (1) the circuit court erred when it denied its motion for summary judgment; (2) The court improperly denied its motions *in limine* and allowed testimony regarding the oral agreement between the Schillers and At World Properties regarding payment of the additional commissions At World Properties provided the Schillers and evidence regarding when commission is earned; (3) the jury's verdict was against the manifest weight of the evidence, thus the court erred in denying K&S's motion for judgment notwithstanding the verdict; and (4) the circuit court's granting the Schillers' motion for *additur* was improper. The Schillers, in appeal under docket number 3-23-0405, argue that the circuit court erred in its findings related to the Wage Act. We will address each argument for each appeal in turn.

8

¶ 21                                    A. 3-23-0411

¶ 22                                  1. Summary Judgment

¶ 23        K&S first argues that the court erred in denying its motion for summary judgment.

Specifically, it contends that the contract is clear and unambiguous – the Schillers were only

entitled to 50% commission for post-term closings. Because the contract is clear, K&S argues

that the circuit court should have granted its motion for summary judgment.

¶ 24        The purpose of summary judgment is to determine whether an issue of fact exists in the

cause of action, not to decide that question of fact. *Adams v. Northern Illinois Gas Co.*, 211 Ill.

2d 32, 42-43 (2004). Summary judgment is a drastic measure that should only be allowed when

the right to relief is "free and clear from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986).

Granting a motion for summary judgment is appropriate when "the pleadings, depositions, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." 735

ILCS 5/2-1005 (West 2022). "A genuine issue of material fact exists where the facts are in

dispute or where reasonable minds could draw different inferences from the undisputed facts."

*Buck v. Charletta*, 2013 IL App (1st) 122144, ¶ 56. We review the circuit court's ruling on a

motion for summary judgment *de novo*. *Murphy-Hylton v. Lieberman Management Services,*

*Inc.*, 2016 IL 120394, ¶ 16.

¶ 25        Generally, if a trial begins after a motion for summary judgment is denied, the order

denying the motion for summary judgment merges with the judgment entered and is not

appealable. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 42.

However, when the issue raised in the motion for summary judgment is a matter of law that

9

would not be before the jury at trial, the order does not merge and may be reviewed by the appellate court. *Labate v. Data Forms, Inc.*, 288 Ill. App. 3d 738, 740 (1997).

¶ 26    Here, the circuit court denied both parties' motions for summary judgment. It found that there were questions of fact that required review by the factfinder. Specifically, the court found that there was a genuine issue of material fact regarding when commissions were earned and which commission split should be applied. Because this case proceeded to trial on issues of material fact, the circuit court's decision regarding K&S's motion for summary judgment is not appealable.

¶ 27                                    2. Motions *in Limine*

¶ 28    K&S next argues that the court improperly denied two of its motions *in limine*. First, K&S argues that the court erred in denying the motion pertaining to its request to bar testimony regarding any alleged oral contract for repayment between the Schillers and At World Properties. Second, it argues that the motion regarding its request to bar discussion of when commission is earned also should have been granted.

¶ 29    A circuit court receives great discretion in determining motions *in limine* and other evidentiary motions and thus will not be disturbed on review absent an abuse of discretion. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). "A trial court will not be found to have abused its discretion with respect to an evidentiary ruling unless it can be said that no reasonable man would take the view adopted by the court." *Id.* Moreover, even if an abuse of discretion occurred, reversal is not warranted unless the record establishes that it created "substantial prejudice affecting the outcome of the trial." *Id.*

¶ 30    "A motion *in limine* is an interlocutory order and remains subject to reconsideration by the court throughout the trial." *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 40 (2010). However, the

10

failure to raise an objection at the appropriate time at trial forfeits consideration of the issue on appeal. *Id.* Moreover, the issue must be further preserved by raising it in a posttrial motion, or else it is waived on appeal. *Balsley v. Raymond Corp.*, 232 Ill. App. 3d 1028, 1029 (1992).

¶ 31    Here, K&S failed to object at trial when the Schillers presented evidence regarding the alleged oral contract between the Schillers and At World Properties. Additionally, K&S failed to include this issue in its posttrial motion. This issue is therefore waived on appeal.

¶ 32    As for the motion *in limine* requesting a bar on testimony regarding when commission is earned, K&S also failed to preserve this issue on appeal. K&S did not object to the evidence when it was presented during trial. In fact, K&S provided its own witness who testified as to her opinion about when commissions were earned. Moreover, K&S only directed its motion *in limine* on this issue toward the Wage Act claim. It cannot now argue that the court erred by not granting a motion to bar evidence against a claim to which the motion did not originally apply. Accordingly, we find that K&S forfeited review of this issue on appeal.

¶ 33        3. Judgment Notwithstanding the Verdict and Manifest Weight of the Evidence

¶ 34    K&S's main argument on appeal is that the circuit court erred in denying its motion for judgment notwithstanding the verdict because the jury's verdict was inconsistent with the damages award. It also argues that the jury's verdict was against the manifest weight of the evidence for this same reason.

¶ 35    A judgment notwithstanding the verdict should be entered "in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). We review *de novo* the circuit court's

11

decision to grant or deny a motion for judgment notwithstanding the verdict. *Harris v. Thompson*, 2012 IL 112525, ¶ 15.

¶ 36 The standard for obtaining a judgment notwithstanding the verdict is a "very difficult standard to meet, limiting the power of the [circuit] court to reverse a jury verdict to extreme situations only." *People ex rel. Department of Transportation v. Smith*, 258 Ill. App. 3d 710, 714 (1994). The court has no right to enter a judgment notwithstanding the verdict if there is any evidence, together with reasonable inferences, demonstrating a factual dispute or where the credibility of the witnesses or an assessment of the conflicting evidence is decisive to the outcome of the trial. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). We will not reweigh the evidence, make credibility determinations, or substitute our judgment for the jury's merely because the jury could have drawn other inferences or conclusions, or because we believe another result would be more reasonable. *Thorton v. Garcini*, 382 Ill. App. 3d 813, 813 (2008).

¶ 37 Additionally, a verdict is against the manifest weight of the evidence if the opposite conclusion is clearly evident, or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Schroeder v. Post*, 2019 IL App (3d) 180040, ¶ 13.

¶ 38 K&S asserts that the judgment in favor of the Schillers must be reversed because the contract is clear and unambiguous in stating that the Schillers should only receive a 50% commission under the policy manual. It further contends that the jury's award of damages amounting to only 75% commission, an amount neither party suggested nor advocated for, establishes that the jury did not believe K&S actually breached the contract, thus making the verdict inconsistent with the facts and arguments presented. K&S argues that, at the very least, the damages award is arbitrary and not based on the evidence, thus making the jury's verdict manifestly erroneous.

12

¶ 39    To succeed in a breach of contract claim, the Schillers had to prove the existence of an enforceable contract, substantial performance on their part, a breach by K&S, and damages caused by that breach. *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. The jury here was specifically tasked with interpreting the terms of the parties' original contract, the second addendum, and the policy manual to determine whether the policy manual applied to the Schillers in their current situation, and whether K&S breached the terms of their agreement by paying commission to the Schillers pursuant to the policy manual instead of the 90% commission outlined in the second addendum.

¶ 40    As the court found when denying K&S's motion for judgment notwithstanding the verdict, it was reasonable for the jury to have found that all the elements of a breach of contract claim were proven: (1) a contract was formed between K&S and the Schillers; (2) the Schillers performed pursuant to the terms of the contract; (3) K&S failed to meet its obligations under the contract by refusing to pay them the full 90% commission; and (4) damages as a result of K&S's breach. See *Ivey*, 2022 IL 127903, ¶ 28. Here, the parties' agreement regarding commission figured "during the term" of the agreement and when that commission becomes "earned" is ambiguous; there are two different yet not unreasonable interpretations of that language that may be, and were, argued at trial. The agreement here does not specifically state when the commission is earned. Thus, the contract is ambiguous as to this issue, and the settled rule regarding when a broker is entitled to receive a commission applies. *Zink v. Maple Inv. and Development Corp.*, 247 Ill. App. 3d 1032, 1037 (1993). A plaintiff's right to recover his commission is governed by his employment agreement with the defendant. *Id*. Accordingly, the case law indicates that the Schillers earned their commission when a viable real estate contract was executed. See *Zink*, 247 Ill. App. 3d at 1037.

13

¶ 41    Because the execution of the real estate contracts at issue in this litigation occurred during the term of the agreement, the Schillers earned their commission during the term of the contract and are entitled to a 90% commission split. See *id.* We cannot say that the jury's determination in this case was unreasonable, arbitrary, and not based on the evidence presented or that the opposite conclusion is readily apparent. Therefore, the verdict was not against the manifest weight of the evidence, and the circuit court properly denied K&S's motion for judgment notwithstanding the verdict.

¶ 42                                    4. *Additur*

¶ 43    The last argument K&S raises in its appeal is that the court improperly granted the Schillers' motion for *additur*. The jury awarded an amount equal to 75% of commission received on each real estate transaction at issue; however, this was not an amount offered or argued by either party. In finding that K&S breached its contract with the Schillers the jury necessarily found that the provision in the second addendum awarding the Schillers a 90% commission split controlled. By not awarding damages in the amount requested by the Schillers, the jury's award is clearly inconsistent with its finding that K&S breached the contract.

¶ 44    The Schillers first argue that the court did not grant the increase under their *additur* motion, but rather under their motion for judgment notwithstanding the verdict. However, a judgment notwithstanding the verdict is the incorrect avenue to correct an error in a jury's damage award. See *Allstate Insurance Co. v. Mahr*, 328 Ill. App. 3d 915, 916-18 (2002) (finding that motions for judgment notwithstanding the verdict are limited to liability issues and that motions for *additur* are used to contest the amount of damages); see also *Hughes v. Bandy*, 404 Ill. 74, 80, (1949) (finding that the fact that the amount in damages was not in dispute does not change the analysis regarding a motion for judgment notwithstanding the verdict). A court may

14

not use a motion for judgment notwithstanding the verdict to increase a damages award, thus the court in the instant case must have granted the Schillers' motion for *additur*.

¶ 45 In general, courts are reluctant to interfere with a jury's determination of the monetary amount that adequately compensates a plaintiff for his personal injuries. See *Butkewicz v. Chicago Transit Authority*, 252 Ill. App. 3d 914, 918 (1993). However, where a verdict is legally inconsistent, that verdict should be set aside. *Wottowa Insurance Agency, Inc. v. Bock*, 104 Ill. 2d 311, 316 (1984).

¶ 46 Under the doctrine of *additur*, there are only two options under which the circuit court may increase damages. When granting such a motion, the court may order a new trial based on the inadequacy of damages, or it may obtain the defendant's consent to an increase in the award of damages. See *J.I. Case Co. v. McCartin–McAuliffe Plumbing & Heating, Inc.*, 118 Ill. 2d 447, 456–57 (1987); see also *Carr v. Miner*, 42 Ill. 179 (1866). *Additur* is appropriate only to rectify the omission of a liquidated or easily calculated item of damages and is improper if the defendant does not consent to it as an alternative to a new trial. *Hladish v. Whitman*, 192 Ill. App. 3d 561, 565 (1989).

¶ 47 Here the damages award is clearly inconsistent with the jury's verdict, and the circuit court did not err in granting the Schillers' motion for *additur*. However, when granting the motion, the court could only grant a new trial or increase damages if K&S consented to the increase. The court neither ordered a new trial nor requested K&S's consent to increase the award. Thus, the court erred in increasing the amount in damages given to the Schillers, and as such the damages award must be vacated. Further, the matter must be remanded and the circuit court must provide K&S an opportunity to consent to the damages increase,  or if no consent is given, a new trial shall be held for the sole purpose of determining damages.

15

¶ 48                                    B. 3-23-0405

¶ 49                                   1. The Wage Act

¶ 50        We now move on to appeal 3-22-0405, which challenges the allegations under the Wage

Act. The Schillers raise several arguments regarding the circuit court's finding that the Wage Act

was not applicable to the circumstances here, including: (1) the court improperly interpreted the

parties' contract regarding when commission was earned and that the commissions did not

qualify as final compensation under the Act, (2) the court erred in holding that the Schillers'

resignation resulted in them relinquishing their right to those commissions, and (3) the court

erred in finding that the policy manual "overrode" the commission split provided in the second

addendum. To put it simply, the Schillers argue that the circuit court erred in its interpretation

and application of the Wage Act to the facts of the case before it.

¶ 51        In interpreting the Wage Act, courts must give effect to the intent of the legislature.

*Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 229 (2008). The

most reliable indicator of the legislature's intent is the language of the statute, which is given its

plain, ordinary, and popularly understood meaning. *Id.* Furthermore, when interpreting a statute,

the court must presume that when the legislature enacted the law, it did not intend to produce

absurd, inconvenient, or unjust results. *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 282

(2006). We review contract interpretation *de novo. Gallagher v. Lenart*, 226 Ill. 2d at 219.

¶ 52        The purpose of the Wage Act is to provide Illinois employees with a cause of action to

receive timely and complete payment of earned wages or final compensation when he or she

separates from his or her employer. *Majmudar v. House of Spices (India), Inc.*, 2013 IL App

(1st) 130292, ¶ 11; see also *Armstrong v. Hedlund Corp.*, 316 Ill. App. 3d 1097, 1107 (2000)

(The purpose of the Wage Act is "to insure the prompt and full payment of wages due workers at

16

the time of separation from employment, either by discharge, layoff or quitting."). To state a claim under the Act, employees are "required to demonstrate that they are owed compensation from [the employer] pursuant to an employment agreement." *Enger*, 812 F.3d at 568. There is no dispute regarding whether an employment agreement existed in this case; it is clear that one did.

¶ 53    The Act defines "wages" as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2 (West 2016). "Final compensation" under the Wage Act is defined as wages, salaries, earned commissions and bonuses, earned vacation and holidays, and any other compensation owed pursuant to an agreement between the parties, that the employer must pay no "later than the next regularly scheduled payday." *Majmudar*, 2013 IL App (1st) 130292, ¶ 17; see also 820 ILCS 115/5 (West 2016). Final compensation payments must be determinable at the time of or very soon after separation. See *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 545 (2009).

¶ 54    In finding that the language in the second addendum did not entitle the Schillers to receive commissions after their separation from K&S, the circuit court found that the commission split provided in the second addendum only applied "during the term" of the agreement and that the agreement only remained in effect until the Schillers' and K&S's business relationship ended. Thus, because the commissions the Schillers did not receive were not available until after their separation from K&S, the circuit court ruled that the terms of the second addendum did not apply.

¶ 55    The right to recover a commission is governed by the parties' employment contract. See *Zink*, 247 Ill. App. 3d at 1037. Paragraph 6 of the Schillers' and K&S's agreement provided: "When Sales Associate shall perform any service whereby a commission is earned, said commissions shall be divided between Koenig & Stray GMAC and Sales Associate as stated in

17

the Company Policy Manual." The language here creates a clear difference between when commission is earned and when that commission becomes payable to the Schillers. However, the language is less clear regarding what designates a commission as "earned."

¶ 56    Because the contract is unclear, we follow the rule provided in *Zink v. Maple Investing and Development Corp.*, 247 Ill. App. 3d 1032, 1037 (1993):

> "If a real estate broker produces a purchaser, within the time limit of his authority, who is ready, willing and able to purchase the property on the terms prescribed by the seller, he is entitled to a commission even if the seller refuses to perform the contract. The purchaser procured by the broker and the seller must enter into a valid and enforceable contract on the terms proposed in the brokerage agreement. The sales contract must be mutually obligatory upon the seller and purchaser in order for the broker to recover the commission where the sale is not consummated. When there are contingencies in the contract which render it unenforceable by the seller, the broker is entitled to a commission only if he shows the contingencies have been met." *Id.*

Illinois appellate court precedent indicates that a broker's commission is earned once a ready, willing, and able buyer is produced. *Hallmark & Johnson Properties, Ltd. v. Taylor*, 201 Ill. App. 3d 512, 526 (1990). Once a seller enters into an enforceable sales contract with a purchaser procured by a broker, the broker's right to commission accrues regardless of whether the sale is ever completed. *Id.*

¶ 57    We find that the Schillers earned their commission when they procured fully executed real estate contracts, all of which were "during the term" of their agreement with K&S. This commission was easily calculable as the commission represented a set percentage of the sale

18

price provided in the real estate contract. Accordingly, the Schillers' commissions constituted "final compensation" under the Wage Act, and the circuit court erred in finding that the Wage Act did not apply to the situation here. We therefore remand the matter for further proceedings related to the Wage Act claim.

¶ 58                                              III. CONCLUSION

¶ 59       The judgment of the circuit court of Du Page County is affirmed in part, vacated in part, reversed in part, and remanded for further proceedings under the Wage Act Claim and to obtain K&S's consent to increase damages or else hold a new trial on damages only if no consent is provided for the breach of contract claim.

¶ 60       Affirmed in part, vacated in part, reversed in part, and remanded for further proceedings.

¶ 61       JUSTICE HETTEL, concurring in part and dissenting in part:

¶ 62       I agree with all of the majority's conclusions in this case except its determination that the trial court erred in denying the Schillers' Wage Act claim. I agree with the trial court that the Wage Act does not apply in this case.

¶ 63       To establish a claim under the Wage Act, a plaintiff must demonstrate that "wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Landers-Scelfo v. Corporate Office Systems, Inc*., 356 Ill. App. 3d 1060, 1067 (2005). Payments to separated employees are termed "final compensation," which is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation *owed the employee* by the employer pursuant to an employment contract or agreement between the 2 parties." (Emphasis added.) 820 ILCS 115/2 (West 2020). The Illinois Department of Labor's regulations interpreting the Wage Act state as follows: "A separated employee has a right to an earned

19

commission *when the conditions regarding entitlement to the commission have been satisfied* notwithstanding the fact that, due to the employee's separation from employment, the sale or other transaction was consummated by the principal personally or through another agent." (Emphasis added.) 56 Ill. Adm. Code § 300.510 (eff. Aug. 22, 2014).

¶ 64        Here, the Schillers were not owed or entitled to their commissions when they separated from K&S. Pursuant to the Sales Associate Agreement between the Schillers and K&S, the commissions were not due and payable to the Schillers until they were "collected" by K&S, which occurred at closings. Both Amy and Timothy testified that they were paid their commissions after closings. Timothy further testified that he was owed a commission only "when and if a deal closes" and stated: "I didn't get paid on deals that didn't close."

¶ 65        The conditions entitling the Schillers to the commissions they sought in their Wage Act claim were not satisfied until closings took place. Because the real estate transactions at issue had not yet closed at the time of the Schillers' separation from K&S, the Schillers were not yet "owed" those commissions. Thus, any commission payments K&S owed the Schillers after the real estate transactions closed are outside the scope of the Wage Act. I would, therefore, affirm the trial court's denial of the Schillers' Wage Act claim.